Ramos Buonomo, Jueza Ponente
TEXTO COMPLETO DE LA SENTENCIA
Tenemos ante nuestra consideración dos recursos de revisión, administrativa relacionados con una controversia que tiene un largo historial ante el foro judicial y ante los diversos foros administrativos, que *607 lamentablemente sugiere cómo, en ocasiones, parecen utilizarse los procesos judiciales y administrativos -y su lentitud intrínseca- como una manera de prolongar una situación contraria al Derecho.
En virtud de lo dispuesto en la Regla 38.1 de Procedimiento Civil, 32 L.P.R.A. Ap. III, R. 38.1, ordenamos la consolidación de los dos recursos de revisión administrativa presentados, los casos KLRA-00-00276 y KLRA-01-00229, por comprender cuestiones comunes de hechos y de derecho, a pesar de cuestionar resoluciones de dos agencias distintas.
En el primer recurso, KLRA-00-00276, CCM Management, Inc. (en adelante, CCM), nos solicita que revoquemos una resolución emitida por la Junta de Planificación (en adelante, la Junta), el 2 de febrero de 2000, mediante la cual dicho organismo denegó una petición de enmienda a la Consulta Núm. 93-16-0001-JPU, mediante la cual se solicitaba autorización para la ampliación de un área de servicio de la tienda Western Auto localizada en el Caparra Shopping Center.
En su petición ante nos en el caso KLRA-00-00276, CCM argumenta que la Junta de Planificación cometió tres errores: (1) denegar la enmienda solicitada, contraviniendo normas, resoluciones y actuaciones previas de la propia Junta; (2) determinar que la enmienda solicitada constituye una variación y no un uso accesorio; y (3) denegar la enmienda solicitada sin descansar en evidencia sustancial, ignorando la prueba pericial y testifical presentada.
A dicha petición de revisión se opusieron tanto la Junta de Planificación como la Asociación de Condómines [sic] del Condominio Parque San Patricio I (en adelante, la Asociación).
En el segundo recurso, KLRA-01-00229, CCM cuestiona, esta vez, una resolución de la Junta de Apelaciones sobre Construcciones y Lotificaciones (J.A.C.L.), en el caso 96-098-AC, acordada en sesión ejecutiva celebrada el 10 de octubre de 2000 y notificada el 5 de enero de 2001, y cuya reconsideración -presentada por CCM-, fue denegada por dicho organismo mediante una resolución del 16 de marzo de 2001.
Alega CCM que erró la J.A.C.L.: (1) al emitir una resolución sin haber celebrado una vista en los méritos; (2) al determinar que tenía jurisdicción para considerar la apelación presentada ante dicho organismo por la Asociación; y (3) al revocar los permisos concedidos previamente por la Administración de Reglamentos y Permisos (A.R.P.E.), fundamentándose en unas resoluciones que, a juicio de CCM, no sirven de base para la revocación.
No tiene razón CCM en ninguno de los dos recursos. Como veremos, tanto la Junta de Planificación como la J.A.C.L. actuaron correctamente. En consecuencia y por los fundamentos que expresamos a continuación, habiendo expedido previamente el auto solicitado en el caso KLRA-00-00276, expedimos ahora el auto solicitado en el caso KLRA-01-00229 y confirmamos las resoluciones recurridas.
I
Veamos los hechos centrales a ambas revisiones administrativas, a base de las determinaciones hechas por los dos organismos administrativos en las resoluciones recurridas, del expediente de este Tribunal en el caso núm. KLAA-96-00014 -del cual tomamos conocimiento judicial-, y de los documentos incluidos en los dos expedientes ante nos, incluyendo la transcripción de la vista pública del 23 de septiembre de 1999 ante la Junta de Planificación incluida en el apéndice del recurso KLRA-00-00276.
El Caparra Shopping Center es un centro comercial ubicado en la Avenida Roosevelt, Barrio Pueblo Viejo de Guaynabo, en un distrito C-4, según el Mapa de Zonificación de Guaynabo. El Condominio Parque San Patricio I es un condominio residencial adyacente al centro comercial, localizado en la parte posterior del mismo. CCM es la compañía que opera el referido centro comercial.
En 1993, por conducto de la firma de arquitectos Milton M. Ruiz y Asociados, CCM sometió ante la Junta de *608 Planificación una consulta de ubicación para una ampliación del referido centro comercial. Dicha consulta consistía en la construcción de un edificio de 92,250 pies cuadrados, de los cuales 33,200 serían para venta al detal y 21,740 p.c. para área de almacén y circulación, además de un edificio para 940 espacios de estacionamiento. La Junta -después de celebrar una vista pública, el 14 de mayo de 1993, para considerar la referida consulta-, aprobó, en reunión de 8 de octubre de 1993, la Segunda Extensión a la Consulta Núm. 93-16-0001-JPU, autorizando la ampliación de 92,250 p.c. solicitada.
El 24 de febrero de 1995, CCM presentó una solicitud de enmienda a la consulta Núm. 93-16-0001-JPU, en la cual solicitó disminuir el área autorizada a 18,000 p.c. Como parte de esta nueva petición, CCM propuso, además, utilizar parte de dicha área -1,846 p.c.- "para la expansión del taller de mecánica de la tienda Western Auto" localizada en el referido centro comercial.
El 10 de noviembre de 1995, mediante la Séptima Extensión a la Consulta Núm. 93-16-0001-JPU, la Junta acordó aprobar la enmienda solicitada, a base únicamente de la información existente en el expediente y sin celebrar vistas públicas para considerar la solicitud de enmienda.
Inconforme con la decisión de la Junta, la Asociación presentó una solicitud de reconsideración ante dicho organismo.
El 7 de diciembre de 1995, la Junta se reafirmó en su decisión. El 12 de enero de 1996, la Asociación presentó un recurso de revisión ante el Tribunal Superior, Sala de San Juan, al que fue asignado el número de caso KAC-96-0057 (907). Estando el caso pendiente de trámite, fue aprobada la nueva Ley de la Judicatura de 1994, Plan de Reorganización Núm. la de la Rama Judicial, de 28 de julio de 1994, según enmendado, 4 L.P.R.A. sees. 22 y ss. (Supl. 2000). A tenor con las disposiciones de la nueva ley, el 19 de junio de 1995, el caso fue referido a este Tribunal y se le asignó el número KLAA-96-00014.
El 31 de julio de 1997, dictamos sentencia en el referido caso KLAA-96-00014. Determinamos que no teníamos jurisdicción para considerar la autorización de la ampliación del centro comercial, pues este aspecto de la petición había advenido final y firme a raíz de la consulta de 1993, pero revocamos lo concerniente a la ampliación del taller de mecánica de Western Auto, autorizada por la Junta mediante el acuerdo de 10 de noviembre de 1995. En dicha sentencia, expresamos lo siguiente:

"El 22 de febrero de 1995, el recurrido Comercial presentó ante la Junta una enmienda para reducir el proyecto a 18,000 p/c, el cual estaba acorde al concepto de ventas al detal y de oficinas aprobado por la Junta previamente. De hecho, no era necesario solicitar autorización para construir en menos espacio del autorizado. No obstante, introdujo en la misma un concepto el cual no estaba contemplado en la propuesta original y el cual no fue discutido en vista publica. Este concepto era diferente a los ya presentados, en sus propósitos, en el impacto al ambiente y en el perjuicio que el mismo podría causar a las áreas residenciales circundantes. Además, los problemas de zonificación que confrontaba esa ampliación, la naturaleza y magnitud del mismo, justificaban el que la Junta considerara este aspecto del proyecto como una nueva consulta. Ello tendría el efecto de reiniciar los trámites interagenciales, incluyendo la presentación de documentación, tales como planos, estudios, endosos de las agencias, declaración de impacto ambiental y celebración de vista publica. Luego de ello, formular un juicio razonado y fundamentado en cuanto a dicha solicitud y proceder a la expedición de una nueva resolución.

Al autorizar la ampliación del taller de mecánica, la Junta autorizó "sub silentio" la operación de dicho taller, el cual estaba siendo operado sin los correspondientes permisos gubernamentales." (Enfasis suplido.)
Sentencia en el caso KLAA-96-00014, de 31 de julio de 1997, incluida a la pág. 151 del apéndice, en el recurso KLRA-00-00276.
Inconforme con la determinación de este Tribunal, CCM solicitó reconsideración. El 31 de octubre de 1997, *609 emitimos una resolución en la que denegamos la reconsideración y confirmamos la sentencia del 31 de julio de 1997, expresando que "en ausencia de un permiso válido de variación en uso, [CCM] deberá llevar a cabo los procedimientos correspondientes a tenor con las disposiciones del Reglamento de Zonificación".
El 3 de diciembre de 1997, CCM presentó ante este Tribunal una moción aclaratoria, dentro del mismo caso KLAA-96-00014. En la misma, indicó que, aunque no tenía derecho a una segunda moción de reconsideración, deseaba informar que había obtenido de la A.R.P.E. un permiso de uso "94-16-F-056-SPC- i", y que la Junta había aprobado una nueva resolución, de aplicación general, denominada JP-97-259, en la cual establecía ciertos criterios para autorizar los talleres de mecánica liviana como un uso accesorio en los distritos C-2 y C-4. 
En respuesta a dicha moción aclaratoria, emitimos una nueva resolución, "el 12 de diciembre de 1997, mediante la cual tomamos conocimiento de la resolución JP-97-259 y dejamos sin efecto, motu proprio, la resolución del 31 de octubre de 1997 -mediante la cual habíamos declarado sin lugar la reconsideración-, ordenando a las partes, además, que explicaran cómo afectaba dicha resolución JP-97-259 a la controversia planteada y si, por lo tanto, se debía reconsiderar la sentencia de 31 de julio de 1997.
Habiendo sometido las partes sus respectivas posiciones, emitimos una nueva resolución en el caso KLAA-96-00014, el 24 de febrero de 1998, en la que declaramos sin lugar, nuevamente y de modo definitivo, la reconsideración, reestableciendo, de ese modo, en todo su vigor, la sentencia del 31 de julio de 1997.
Nuevamente inconforme, CCM acudió al Tribunal Supremo, quien declaró no ha lugar la petición de certiorari y una subsiguiente moción de reconsideración.
Ante la negativa del Tribunal Supremo a considerar el caso, CCM acudió nuevamente ante la Junta de Planificación, buscando, supuestamente, aclarar con dicho organismo cuál sería el proceso adecuado para lograr la ampliación del taller. Mediante una carta de 14 de septiembre de 1998, CCM expuso, en específico, lo siguiente:

"CONSULTA NUMERO 93-16-0001-JPU AMPLIACION CENTRO COMERCIAL PLAZA CAPARRA (AREA DE SERVICIO WESTERN AUTO).

En la consulta de referencia, tras varios largos procedimientos legales, el Tribunal determinó que era necesario someter a vista pública el tema de la expansión del área de trabajo en la parte posterior del Centro Comercial de Caparra Shopping Center donde está localizada la tienda Western Auto. En el pasado habían [sic] tres naves de trabajo, dos bajo techo y una en el exterior. Tras las modificaciones que la Junta autorizara, se ampliaron a cinco las naves de trabajo.

Mientras se diluciden estos asuntos, Commercial Centers [CCM] y Western Auto han acordado cerrar dos de las naves para estar en cumplimiento con la ley. Por los fundamentos que expresamos en el memorándum adjunto, entendemos que el procedimiento a seguir es la celebración de una vista solamente sobre este tema.

Muy respetuosamente solicitamos de esta Honorable Junta que nos aclare cuál es el procedimiento necesario para cumplir cabalmente con la ley y los reglamentos aplicables. Solicitamos que le den consideración al memorándum adjunto y nos orienten al respecto. (Enfasis suplido.)

Carta enviada por Milton M. Ruiz y Asociados al Presidente de la Junta, a la pág. 172 del apéndice, en el recurso KLRA-00-00276.
En el memorando anejado a la citada carta de 14 de septiembre de 1998, CCM indica:

*610
"La Junta ya se ha expresado sobre uno de los temas objeto de estos procedimientos. Mientras los procedimientos judiciales progresaban, la Junta emitió la resolución 'Aclarando particulares sobre el uso de mecánica liviana en proyectos comerciales', resolución JP-97-259, adoptada el 24 de enero de 1997. En dicha resolución, la Junta confirma que en distritos zonificados C-2 y C-4 está permitido el uso de mecánica liviana.

A base de lo anterior, la única gestión pendiente referente a esta consulta es la celebración de una vista para que se acojan los comentarios de las personas pertinentes en cuanto a la ampliación del área de servicio de Western Auto en la parte posterior del centro comercial.

A este respecto...". (Enfasis suplido.)
Memorando sometido ante la Junta de Planificación, incluido a la pág. 177 del apéndice, en el recurso KLRA-00-00276.
La Junta acogió la comunicación de CCM y el memorando anejo como una nueva solicitud de enmienda a la consulta de ubicación 93-16-0001-JPU, y emitió, el 3 de marzo de 1998, la Novena Extensión a la Resolución 93-16-0001-JPU, mediante la cual acordó comenzar el procedimiento para celebrar la vista pública solicitada, allanándose, en ese sentido, al curso de acción propuesto por CCM. En lo pertinente, la Novena Extensión indica:

"El Tribunal, el 31 de julio de 1997, dictó sentencia a los efectos de revocar el acuerdo de 10 de noviembre de 1995 de la Junta de Planificación, por entender que no se había considerado en vista pública.

Ante esta situación, la parte proponente, en comunicaciones del 14 de septiembre de 1998 y 4 de febrero de 1999, solicita a la Junta de Planificación que considere su proyecto, incluyendo el taller de mecánica liviana de la tienda de artículos de vehículos de motor existente en el centro comercial.
La Junta de Planificación, en su reunión del 3 de marzo de 1999, acordó dejar en suspenso la consulta por treinta (30) días para que la parte proponente someta los documentos para la celebración de una vista pública. Dichos...". (Enfasis suplido.)
Novena Extensión a la Resolución 93-16-0001-JPU, de 3 de marzo de 1999, a la pág. 179 del apéndice, en el recurso KLRA-00-00276.
El aviso de la vista pública requerido fue publicado en el periódico El Vocero, el 20 de agosto de 1999. En el mismo se indicó, en lo pertinente:

"AVISO VISTA PUBLICA

8 DE SEPTIEMBRE DE 1999 SOBRE ENMIENDA CONSULTA DE UBICACION PARA LA AMPLIACION DE UN PROYECTO COMERCIAL EN EL BARRIO PUEBLO VIEJO DE GUAYNABO

Para conocimiento del público en general y de conformidad con las disposiciones del Artículo 27 de la Ley Número 75, del 24 de junio de 1975, según enmendada, conocida como "Ley Orgánica de la Junta de Planificación de Puerto Rico", y en conformidad con la Sentencia dictada por el Tribunal de Circuito de Apelaciones, Circuito Regional Vi-Panel II Caguas/Humacao/Guayama el 31 de julio de 1997, para el caso KAC96-0057, se informa que la Junta de Planificación celebrará vista pública, según se dispone a continuación:

CONSULTA NUMERO: 93-16-0001-JPU

PETICIONARIO: Sr. Marcos León

DUEÑO DE LA PROPIEDAD: Commercial Centres Management

*611
Fecha: 8 de septiembre de 1999 Hora: 9:00 A.M.

Lugar: Salón de Asambleas de la Casa Alcaldía de Guaynabo

ASUNTO A DISCUTIRSE:

Propuesta enmienda a consulta de ubicación para la ampliación del taller de mecánica de la tienda de venta de artículos de vehículos de motor existente en el Centro Comercial Caparra, con un área de 1,684 pies cuadrados.

Los terrenos objeto de consulta tienen una cabida de 9.64 cuerdas y radican en la Avenida Roosevelt, en el Barrio Pueblo Viejo de Guaynabo. Están delimitados por el Norte, con la Avenida Roosevelt; por el Sur, con la Urbanización Parque San Patricio; por el Este, con la Calle Parkside y por el Oeste con la Urbanización Caparra Heights.

Dichos terrenos están comprometidos dentro de un distrito C-4, según el Mapa de Zonificación de Guaynabo vigente, por lo que se deberá discutir el proyecto a la luz del Reglamento de Planificación Número 4, así como las variaciones a las disposiciones reglamentarias correspondientes.

EXPOSICION DEL CASO:

En la exposición del caso, la parte proponente informará sobre los accesos vehiculares al proyecto: el impacto del tránsito que pueda generar el proyecto sobre las vías existentes en el sector, los servicios públicos existentes y a proveerse, tales como: alcantarillado sanitario y pluvial, abasto de agua potable, energía eléctrica, etc., método de disposición de desperdicios sólidos generados en el proyecto, empleos a crearse en fases de construcción y operación; disponibilidad de terrenos apropiados para uso industrial incidental, así como cualquier otro tema que estime pertinente al caso." (Enfasis en bastardillas suplido; énfasis en negro en el original.)
Anuncio de vista pública, a la pág. 198 del apéndice, en el recurso KLRA-00-00276.
La vista ante la Junta de Planificación se celebró el 23 de septiembre de 1999. A la misma acudieron, entre otros, en representación de CCM, el Arq. Milton Ruiz, y el gerente.de operaciones de Western Auto, el Sr. Mercado Ortiz, quienes explicaron que la ampliación procuraba atender los reclamos de los vecinos, mediante la construcción de una estructura en hormigón, con el propósito de controlar los ruidos provenientes de la operación del taller. El Arq. Ruiz admitió, sin embargo, que el uso de taller de mecánica no está comprendido dentro de los usos permitidos en el Distrito de Zonificación C-4, Sec. 24.01 del Reglamento de Planificación Núm. 4, ni está permitido como uso accesorio, Sec. 83.03 del Reglamento Núm. 4. Véase, transcripción de la vista pública del 23 de septiembre de 1999, a las págs. 313-321 del apéndice, en el recurso KLRA-00-00276. No obstante, el Arq. Ruiz indicó que la petición no constituía una nueva consulta, ni una solicitud de variación en uso. Véase, transcripción, supra, a las págs. 278, 281, 330 y 331 del apéndice, KLRA-00-00276. El gerente de operaciones de Western Auto admitió que el taller ha estado en funcionamiento desde la década de 1970 hasta el presente y que operó desde 1997 con un permiso de uso de A.R.P.E. Véase, transcripción, supra, a las págs. 374 y ss. del apéndice, KLRA-00-00276.
Con posterioridad a la vista pública, la Junta emitió la resolución recurrida en el caso KLRA-00-00276 y denegó, como ya indicamos, la enmienda solicitada. Inconforme, CCM presentó una solicitud de reconsideración, que la Junta declaró sin lugar, mediante la Decimotercera Extensión a la Consulta Núm. 93-16-0001-JPU, de 24 de marzo de 1996.
Inconforme, CCM presentó el recurso de revisión que nos ocupa en el caso KLRA-00-00276. Luego de diversos incidentes procesales, de haber presentado las partes innumerables escritos y de haber expedido este *612 Tribunal el auto solicitado -mediante una resolución de 31 de marzo de 2000., procedemos a resolver el mismo, conjuntamente, como ya indicamos, con el recurso KLRA-01-00229, aquí consolidado. Veamos, brevemente, el historial de este último ante la A.R.P.E. y, posteriormente, ante la J.A.C.L.
n
Habiendo obtenido de la Junta de Planificación la aprobación de la enmienda a la consulta adoptada el 10 de noviembre de 1995 -y no empece al hecho de que dicha enmienda era objeto de revisión ante el Tribunal de Primera Instancia-, CCM solicitó a la A.R.P.E. la aprobación de las fases posteriores del proyecto, presentando una solicitud de anteproyecto y de permiso de constmcción. El 26 de enero de 1996, la A.R.P.E. aprobó el anteproyecto 95-17-B-117-CPA. Basándose en dicha aprobación, el 1 de febrero de 1996, CCM solicitó a dicha agencia la reapertura y reconsideración del permiso de constmcción. El 23 de febrero de 1996, la agencia autorizó la reapertura y prórroga solicitadas -mediante un Informe sobre acuerdo adoptado por el director de la Oficina Regional de San Juan-, en el cual indicó que "[l]a ampliación propuesta será utilizada para venta e instilación de gomas, baterías y accesorios de automóviles". Dicho informe fue notificado el 13 de marzo de 1996. El 26 de marzo de 1996, la A.R.P.E. concedió el permiso de uso 96-5-662. El formulario de permiso indica, como uso propuesto, "Tienda para la venta e instalación de accesorios, gomas y baterías de automóviles". (Enfasis nuestro.)
Paralelamente con estos hechos, estaban ocurriendo otros procedimientos ante la A.R.P.E. y ante los tribunales. El 12 de febrero de 1996, a raíz de la presentación de una querella ante dicha agencia por parte de la Asociación -con el número de querella 95-16-B-979-SPQ-, la A.R.P.E. presentó ante el Tribunal de Primera Instancia un Procedimiento Especial en contra de CCM -a base del Art. 28 de la Ley Orgánica de la Administración de Reglamentos y Permisos, Ley 76 de 24 de junio de 1975, 23 L.P.R.A. see. 72-, por operar un taller de mecánica en violación a la reglamentación vigente. El 3 de abril de 1996, el Tribunal de Primera Instancia celebró una vista, durante el transcurso de la. cual, la Asociación, a través de su presidenta, Sra. Elena Durán Sobrino, advino en conocimiento de que la agencia había expedido, el 13 y 26 de marzo de 1996, los referidos permisos de constmcción y uso. Ante la presentación de dichos permisos, A.R.P.E. procedió a desistir del procedimiento especial, por lo que el Tribunal de Primera Instancia, en esa misma fecha de 3 de abril de 1996, dictó sentencia archivando la querella 95-16-13-979-SPQ.
El 9 de abril de 1996, la Asociación presentó ante la A.R.P.E. una solicitud de desestimación de la autorización del anteproyecto 95-17-B-117-CPA. 
El 10 de abril de 1996, la A.R.P.E. notificó oficialmente a la Asociación la copia del acuerdo de 13 de marzo de 1996. En dicha notificación advirtió a la Asociación de su derecho a apelar la concesión del permiso ante la J. A.C.L. y reconoció, a su vez, que "por error" no había notificado previamente a la Asociación la concesión del permiso. Véase, pág. 30 del apéndice en el caso KLRA-01-00229.
El 10 de mayo de 1996, la Asociación presentó ante la J.A.C.L. la apelación que da origen al caso KLRA-01-00229, solicitándole a dicho organismo, entre otros remedios, la anulación de los permisos concedidos por la A.R. P.E. -el permiso de constmcción 94-16-F-056-SPC, el anteproyecto 95-17-B-117-CPA y el permiso de uso 96-5-662-, y la restauración del acuerdo del Director de la Oficina Regional de San Juan adoptado el 23 de junio de 1996. Esto dio inicio a un procedimiento ante la J.A.C.L., con el número de caso 96-098-AC.
Dentro de ese procedimiento, y luego de diversos incidentes, el 5 de junio de 1997, la J.A.C.L. paralizó los procedimientos ante sí, en tanto este Tribunal resolvía el caso KLAA-96-00014 o instruía a la J.A.C.L. a proseguir.
El 2 de septiembre de 1997, la Asociación compareció ante la J.A.C.L. y solicitó la revocación sumaria de los permisos concedidos por la A.R.P.E. -el permiso de constmcción 94-16-F-056-SPC y el anteproyecto 95-17-B-117-CPA-, en consideración a la determinación dictada por este Tribunal en el caso KLAA-96-00014, el *613 31 de julio de 1997, y la correspondiente revocación de la resolución de la Junta de Planificación de 10 de noviembre de 1995. Ante la oposición de CCM, que presentó una moción indicando que el caso era objeto de reconsideración por este Tribunal, la J.A.C.L. no tomó ninguna acción específica.
El 1 de septiembre de 1998, -una vez concluido ante este Tribunal, de modo definitivo, el caso KLAA-96-00014-, nuevamente la Asociación solicitó a la J.A.C.L. la revocación sumaria de los permisos concedidos por la A.R.P.E. CCM se opuso, alegando que la Asociación no era parte en el procedimiento, argumentó que ya había levantado previamenle ante la J.A.C.L.
Hacia el 27 de enero de 1999, la Asociación presentó una tercera solicitud de revocación sumaria de los referidos permisos. CCM se opuso a esta petición, al igual que lo había hecho en las otras ocasiones. Levantó, nuevamente, el argumento de la falta de legitimación de la Asociación y alegó, además, que no procedía la resolución sumaria del caso, pues la J.A.C.L. estaba en la obligación de celebrar una vista pública en sus méritos. Por último, señaló que, de todos modos, CCM había comenzado un nuevo procedimiento ante la Junta de Planificación, por lo que la J.A.C.L. debía "impedir la continuación de esta reclamación, ya que se estaría promoviendo la multiplicación de procedimientos sobre una misma controversia". Véase, pág. 220 del apéndice en el caso KLRA-01-00229.
El 19 de marzo de 1999, la J.A.C.L. fijó fecha para la vista y ordenó a las partes reunirse y preparar un informe conjunto de conferencia con antelación a la vista.
Aún así, por entender que la J.A.C.L. no estaba actuando ágilmente, el 9 de junio de 1999, la Asociación presentó ante este Tribunal, dentro del caso KLAA-96-00014, una moción en auxilio de jurisdicción.
Este Tribunal entendió que dicha moción en auxilio de jurisdicción no era de la competencia de este foro, por lo que refirió el expediente al Tribunal de Primera Instancia, quien acogió el mismo bajo el mismo número de caso KAC-96-0057 (907), que se le había asignado originalmente al presentarse ante el Tribunal Superior.
El Tribunal de Primera Instancia dictó sentencia el 14 de enero de 2000. Determinó que debía agotarse el remedio administrativo, por lo que debía concluir el caso ante la J.A.C.L. antes de que los tribunales pudieran intervenir. Indicó ser consciente, a la vez, de que la controversia era objeto de un recurso de revisión que estaba pendiente ante este Tribunal, refiriéndose, en efecto, al caso KLRA-00-00276.
De vuelta el caso ante la J.A.C.L., ésta, como ya dijimos, determinó, en sesión ejecutiva celebrada el 10 de octubre de 2000, entre otros puntos, dejar sin efecto los tres permisos relacionados: el anteproyecto 95-17-B-117-CPA, el permiso de construcción 94-16-F-056-SPC, y el permiso de uso 96-5-662.
CCM presentó ante la J.A.C.L. una moción de reconsideración. Esta, aunque inicialmente acogió el recurso y ordenó a las partes expresarse, denegó finalmente la reconsideración solicitada, mediante resolución notificada el 16 de marzo de 2001. Es de dicha resolución, que CCM acude ante nos en la revisión administrativa KLRA-01-00229, señalando los errores anteriormente indicados.
III
Analicemos, para comenzar, los errores apuntados en el caso KLRA-00-00276 y, en particular, el primer error. Como dijimos, CCM argumenta que la Junta de Planificación se equivocó al denegar la enmienda solicitada, contraviniendo normas, resoluciones y actuaciones previas de la propia Junta.
¿Obliga la doctrina de los propios actos a una agencia administrativa que no advirtió a un proponente que el mecanismo para obtener una autorización era otro distinto al que dicho proponente propuso y utilizó, sin que la agencia le advirtiera que ese no era el mecanismo adecuado?
No tiene razón CCM. La doctrina de los actos propios no es aplicable al caso de autos.
*614 La doctrina de los actos propios propone que, una vez se ha asumido una posición o conducta con la cual se creó un estado de derecho que ganó la confianza de otra parte que, a su vez, actúa descansando en tal confianza, la primera parte está impedida de asumir una posición o conducta contradictoria a la que previamente había representado. Int. General Electric v. Concrete Builders, 104 D.P.R. 871, 878 (1976). Los requisitos necesarios para la aplicación de dicha doctrina son, por lo tanto: (a) una conducta determinada de un sujeto; (b) que haya engendrado una situación contraria a la realidad, esto es, aparente y, mediante tal apariencia, susceptible de influir en la conducta de los demás; y (c) que sea base de la confianza de otra parte que haya procedido de buena fe y que, por ello, haya obrado de una manera que le causaría un perjuicio si su confianza quedara defraudada. Meléndez Piñero v. Levitt & Sons of P.R., 129 D.P.R. 521 (1991); Int. General Electric v. Concrete Builders, supra. El propósito de tal norma es evitar la conducta contradictoria porque atenta contra la buena fe que debe existir en todos los órdenes del derecho. Cervecería Corona, Inc. v. Commonwealth Ins. Co., 115 D.P.R. 345, 351 (1984).
El caso citado por CCM, Carabarín et al. v. A.R.P.E., 132 D.P.R. 938 (1993), en el que el Tribunal Supremo se reiteró en que "[l]a conducta contradictoria no tiene lugar en el campo del Derecho", es distinto al caso de autos. En Cambarín, supra, la A.R.P.E. había advertido, al notificar una resolución, que el organismo revisor era la J.A.C.L., por lo que estaba impedida, una vez las partes afectadas acudieron ante dicho organismo, de presentar una moción de desestimación alegando -correctamente, de hecho- que, por ley, en ese caso, por estar relacionado con zonas históricas y de interés turístico, la J.A.C.L. no tenía jurisdicción para revisar los mismos y que dicha jurisdicción correspondía al Tribunal Superior.
De todos modos, el Tribunal Supremo ha expresado que, cuando está envuelta una cuestión de interés público, la doctrina de los actos propios no es anteponible al Estado; entiéndase las actuaciones de sus funcionarios y agentes gubernamentales. Del Rey v. J.A.C.L., 107 D.P.R. 348, 355 (1978); Mendoza Aldarondo v. Asociación Empleados, 94 D.P.R. 564, 579 (1967); Infante v. Tribl. Examinador Médicos, 84 D.P.R. 308, 316 (1961). Es decir, se reconoce la facultad al Estado para corregir los errores en los cuales haya incurrido.
A este respecto se ha señalado que "[ejste principio de derecho puede aplicarse, siempre en las relaciones civiles de unos ciudadanos para con otros; pero nunca en las relaciones del ciudadano para con el Estado, cuando hay de por medio una cuestión de interés público que se interpone como barrera, en defensa de los derechos de la colectividad. Infante v. Tribl. Examinador Médicos, supra.
En este sentido, el que en un momento dado, en el caso de autos, la Junta de Planificación haya podido dar la impresión de que bastaba la celebración de una vista para cumplir con los requisitos para otorgar la autorización para la ampliación del taller de Western Auto, nó es impedimento para que, posteriormente, dicha agencia rectifique la información brindada, sin que por ello CCM tenga el recurso de alegar que la doctrina de los actos propios le impida a la Junta corregir el curso de acción propuesto.
De otro lado, es un principio establecido en el derecho administrativo que las agencias tienen la obligación de actuar dentro de los cánones específicos que le otorga la legislación que las crea, al ser su poder uno que emana directamente del poder legislativo que las ha creado. Demetrio Fernández, Derecho Administrativo y Ley de Procedimiento Administrativo Uniforme, Bogotá, Editorial Forum, 1993, pág. 38.
En ese sentido, el Art. 4 de la Ley Orgánica de la Junta de Planificación de Puerto Rico, Ley 75 de 24 de junio de 1975, según enmendada, 23 L.P.R.A. sees. 62 y ss., establece los propósitos generales que persigue la Legislatura al crear la Junta de Planificación:

"Los poderes concedidos por esta ley se ejercerán con el propósito general de guiar el desarrollo integral de Puerto Rico de modo coordinado, adecuado, económico, el cual, de acuerdo a las actuales y futuras necesidades sociales y los recursos humanos, ambientales, físicos y económicos, hubiere de fomentar en la mejor forma la salud, la seguridad, el orden, la convivencia, la prosperidad, la defensa, la cultura, la solidez económica y el bienestar general de los actuales y futuros habitantes, y aquella eficiencia, economía y bienestar social en el 
*615
proceso de desarrollo, en la distribución de población, en el uso de las tierras y otros recursos naturales, y en las mejoras públicas que tiendan a crear condiciones favorables para que la sociedad pueda desarrollarse integralmente."

23 L.P.R.A. sec. 62c.
Entre las facultades que posee la Junta, el Art. 11 de la Ley 75, supra, dispone:

“La Junta tendrá las siguientes funciones y facultades:

1. Adoptar normas y reglamentos para su funcionamiento general.

2....

3. ...

4. Adoptar y aprobar los reglamentos que autoriza esta ley, el Reglamento de Zonificación y el Reglamento de Lotificación, y cualesquiera otros necesarios para cumplir los propósitos de esta ley; adoptar y aprobar los reglamentos que le autorice promulgar cualquier otra ley para cualquier fin especial; y aprobar los reglamentos que, conforme a la Ley Orgánica de la Administración de Reglamentos y Permisos o cualquier otra ley, deba adoptar la. Administración de Reglamentos y Permisos.

5. Adoptar y aprobar los mapas de zonificación y las enmiendas a éstos, según el procedimiento que se establece en esta ley.

7. Dispensar el cumplimiento de uno o varios requisitos reglamentarios con el propósito de lograr la utilización óptima de los terrenos y dirigido hacia el objetivo de poner en práctica el desarrollo urbano compacto; o en los casos en que un uso no permitido, pero compatible con el carácter esencial del distrito, la aplicación de los requisitos de los reglamentos resulte en la prohibición o restricción irrazonable del disfrute de una pertenencia o propiedad y se le demuestre, a su satisfacción, que dicha dispensa aliviará un perjuicio claramente demostrable, pudiendo imponer las condiciones que el caso amerite para beneficio o protección del interés público.

8. ...

13. Preparar y adoptar Planes de Usos de Terrenos conforme a lo dispuesto en esta ley.

14. Hacer determinaciones sobre usos de terrenos dentro de los límites territoriales del Estado Libre Asociado de Puerto Rico, con sujeción a las normas y requisitos consignados en esta ley, o en cualquier otra ley aplicable, para tales casos.

15. ...

22. Ejercer los demás poderes y cumplir con todas las responsabilidades que este capítulo o cualquier otra ley le confieren y tomar las medidas necesarias para cumplir con sus propósitos.

23. Crear cualquier comisión, comité, oficina, subdivisión u otro organismo análogo que estime conveniente o necesario para lograr los propósitos de esta ley.

24. Establecer los requisitos de información del proceso de formulación de política pública y desarrollar y *616 adoptar guías y normas dirigidas a satisfacer dichos requisitos. Requerir toda la información necesaria para el cumplimiento de los propósitos de esta ley.

25. Examinar y velar porque las determinaciones de política general y reglamentos de los organismos gubernamentales se ajusten a los reglamentos, planes y políticas que establezca la Junta.

23 L.P.R.A. sec. 62j (Enfasis nuestro.)
En otras palabras, la Junta tiene la facultad y la obligación de desarrollar la política pública y los reglamentos específicos, de aplicación general, que regirán las determinaciones que la propia Junta -y otros organismos, como la A.R.P.E.- tomen sobre el uso del suelo en Puerto Rico. Del mismo modo, la Junta tiene la facultad de tomar las determinaciones sobre cada terreno particular, aplicando, a esos efectos, la política pública y la reglamentación general desarrolladas por ella y por otras agencias análogas.
Como ha indicado el Tribunal Supremo, es norma de derecho claramente establecida que los tribunales apelativos han de conceder gran consideración y deferencia a las decisiones administrativas en vista de la vasta experiencia y conocimiento especializado de la agencia, por lo que la revisión judicial está limitada a determinar si la actuación administrativa fue razonable y cónsona con el propósito legislativo o si, por el contrario, fue irrazonable, ilegal o si medió abuso de discreción. T. JAC, Inc. v. Caguas Centrum Limited, 148 D.P.R._(1999), 99 J.T.S. 60; Misión Ind. P.R. v. J.C.A., 145 D.P.R. _ (1998), 98 J.T.S. 77.
En el caso de autos, como veremos a continuación, la Junta de Planificación no actuó de modo irrazonable, ni ilegal, ni medió abuso de discreción, sino que actuó dentro de los parámetros que le confiere la ley y en el desempeño de sus funciones. Aunque en algún momento, la Junta, a base de las sugerencias de CCM, hubiera aceptado indirectamente el curso de acción propuesto por CCM, de indicar que se requería únicamente celebrar una vista pública, esa actuación de la Junta no creó un estado de derecho que obligara a dicha agencia, en determinaciones futuras, a atenerse a lo previamente resuelto. Para empezar, la Junta tiene todo el derecho, a base de la jurisprudencia previamente citada, de rectificar sus errores, de haberlos cometido. De hecho, de haberse atenido la Junta -por razones de consistencia con actuaciones previas- a la posición de que únicamente era necesario celebrar una vista pública para poder autorizar la ampliación al taller de mecánica de la tienda Western Auto, dicha agencia hubiera podido ser revocada en su determinación.
Aunque CCM señala que la primera vez que la Junta indicó que el mecanismo adecuado para atender la solicitud de dicha compañía era la variación, fue en las determinaciones de derecho de la resolución recurrida, eso no es correcto. En el anuncio de vista pública divulgado en la prensa, se indicó claramente, como vimos al citar el mismo, que se debería discutir el proyecto a la luz del Reglamento de Planificación Número 4, así como las variaciones a las disposiciones reglamentarias correspondientes. Véase, aviso de vista pública, supra. En la vista pública celebrada el 23 de septiembre, como vimos, también se trajo a colación el asunto de la variación.
Argumenta CCM, además, que mediante la referida resolución JP97-259, la Junta autorizó como uso accesorio los talleres de mecánica en los distritos C-2 y C-4, y que esa determinación previa la obliga a conceder la enmienda solicitada. Pero una simple lectura de la referida resolución JP-97-259, sin embargo, nos indica que, como indicamos en nuestra resolución de 24 de febrero de 1998, en el caso KLAA 96-00014, en el distrito C-4, el uso de taller de mecánica liviana, como uso accesorio, tiene que ocurrir, únicamente, en un distrito C-2, o, en el caso de los distritos C-4, tiene que haber sido autorizado expresamente en la resolución que autoriza el proyecto comercial en cuestión.
En otras palabras, las actuaciones de la Junta de Planificación, si bien no fueron todo lo claras que pudieron haber sido, no instituyeron un estado de derecho, como vimos, que obligara a dicha agencia a conceder la autorización solicitada. De todos modos, las actuaciones de CCM a través de este proceso y sus representaciones *617 ante la Junta de que el Tribunal de Circuito de Apelaciones había indicado que únicamente se requería la celebración de una vista pública, no son indicativas de la mejor buena fe, pues ya este foro había indicado claramente, en la sentencia del 31 de julio de 1997, que se trataba de un nuevo proceso de consulta. El requisito de buena fe es un requisito indispensable que se extiende a la totalidad de nuestro ordenamiento jurídico. Velilla v. Pueblo Supermarkets, Inc., 111 D.P.R. 585 (1981).
En resumen, el primer error señalado en el recurso KLRA-00-00276 no fue cometido.
Como segundo error, CCM aduce, como dijimos, que se equivocó la Junta al determinar que la enmienda solicitada constituye una variación y no un uso accesorio.
En una propiedad pueden ocurrir, simultáneamente, un uso principal y uno o varios usos accesorios. Un uso, sea principal o accesorio, tiene que estar expresamente autorizado por la reglamentación aplicable al solar en cuestión, en el distrito de zonificación en que se ubique. La autorización puede ser por vía de un uso expresamente permitido o por vía de excepción. La vía de excepción es un mecanismo que permite ciertos usos expresamente indicados en la reglamentación, siempre y cuando se cumplan los requisitos o condiciones que esa misma reglamentación establece. Cuando un uso está permitido por la reglamentación, ya sea directamente o por vía de excepción, el mismo puede ser concedido ministerialmente. De no estar expresamente autorizado dicho uso por la reglamentación existente, ya sea como uso principal o como uso accesorio, entonces el propietario tiene que recurrir al mecanismo de solicitar una variación en uso.
Según el Reglamento de Zonificación, Reglamento de Planificación Núm. 4 de 16 de septiembre de 1992, el uso es el "[pjropósito para el cual la estructura o edificio fue diseñado, es usado, o se pretende usar" y un uso accesorio, es "[cjualquier uso estrechamente relacionado o complementario al uso principal que se dá [sic] a la pertenencia o propiedad".
Véase, Sec. 2.01 del Reglamento de Zonificación, supra.
A su vez, la definición de una variación es la siguiente:
"Variación - Autorización para utilizar una propiedad para un uso prohibido por las restricciones impuestas a una zona o distrito y que sólo se concede para evitar perjuicios a una propiedad que, debido a circunstancias extraordinarias, la aplicación estricta de la reglamentación equivaldría a una confiscación de la propiedad." (Enfasis suplido.)
Reglamento de Zonificación, supra, Sec. 2.01. 
Como ha indicado el Tribunal Supremo, la figura de la variación es una "válvula de escape dentro del rígido marco" de la zonificación en Puerto Rico. Mun. de San Juan v. Junta de Calidad Ambiental,_D.P.R._(2000), 2000 J.T.S. 193; Asoc. Res. Park Side, Inc. v. J.P., 139 D.P.R. 349 (1995). El referido Reglamento de Zonificación, supra, establece dos tipos de variación, la variación en uso, regida por la Sec. 98.05, y otras variaciones, que consisten en solicitudes para cambiar otros requisitos reglamentarios, como pueden ser, por ejemplo, patios o área de ocupación y a las cuales aplica la Sec. 98.06.
En un distrito de zonificación C-4, como el del caso de autos, los usos permitidos están indicados en la See. 24.02 del Reglamento de Zonificación, supra. Entre éstos, el referido reglamento incluye, en el inciso (9), el uso de "Comercio de neumáticos, accesorios y piezas de vehículos de motor". No indica nada referente a mecánica liviana.
A su vez, los usos accesorios permitidos en un distrito C-4, según indica la Sec. 24.08 del Reglamento de Zonificación, supra, serán los indicados en la Sec. 83.00 de dicho reglamento. La Sec. 83.04 dispone:

*618
''Usos y Edificios Accesorios Relacionados a un Centro de Mercadeo Establecido Conforme a un Distrito C-4 - Los usos y edificios accesorios relacionados a un centro de mercadeo establecido conforme a un Distrito C-4 cumplirán con las siguientes disposiciones adicionales:

1. Usos en edificios accesorios - Los edificios accesorios podrán dedicarse únicamente para los fines expuestos a continuación:

a. Alquiler de películas de vídeo ("Video Club") ,

b. Casa bancaria, financiera o hipotecaria

c. Cinematógrafo

d. Restaurante, cafetería, fuente de soda o barra

e. Comercio de neumáticos, accesorios y piezas de vehículos de motor. (Enfasis suplido.)

2...."
Reglamento de Zonificación, supra, a las págs. 253-254.
Es decir, en un distrito de zonificación C-4 -como se ha repetido ad nauseam en las distintas ocasiones que tanto ante el foro administrativo como ante el judicial, se han analizado los distintos incidentes del caso que nos ocupa- el taller de mecánica liviana no está permitido, ni como uso principal, ni como uso accesorio.
En ese sentido, el Reglamento de Zonificación, supra, reqüiere, en lo pertinente:
''Expedición de Permisos - Se expedirá únicamente permisos de construcción o de uso, o de instalación de rótulos o anuncios cuando la estructura o uso de pertenencia... estén en completa armonía y conformidad con las disposiciones de este Reglamento. Sólo...(Enfasis suplido.)
Reglamento de Zonificación, supra. Sec. 3.04.
En el caso de que un uso no esté autorizado por reglamento, el Reglamento de Procedimientos Adjudicativos de la Junta de Planificación, Reglamento 5244, vigente al momento de comenzar el procedimiento ante la Junta, establece:

"Proyectos que requieren consulta.

(1) En áreas zonificadas, proyectos cuyo uso e intensidad no son permitidos ministerialménte por el Reglamento de Zonificación de Puerto Rico (Reglamento de Zonificación Núm. 4), o por un Plan de Ordenación Municipal, sino que dicha reglamentación permite que los mismos puedan ser autorizados por la Junta, en el ejercicio de sus facultades discrecionales, siguiendo el trámite de consulta de ubicación. Incluye, además, ..."
Reglamento de Procedimientos Adjudicativos, Sec. 3.03.
A su vez, dicho reglamento dispone, en cuanto a los requisitos de radicación, lo siguiente:

"Sec. 4.00 - Requisitos de radicación

Presentación de la consulta.

*619
4.01- Toda consulta se radicará en la Oficina del Secretario de la Junta, utilizando los formularios correspondientes al tipo de consulta, los cuales podrán obtenerse en dicha Oficina. Deberá radicarse, además, en la Oficina del Secretario de la Junta, todo documento relacionado con las consultas radicadas que, por cualquier motivo, se someta a la Junta durante el trámite de las mismas. La fecha de radicación del documento, será para todos los efectos legales, la fecha de su recibo en la Oficina del Secretario de la Junta.

Cuando una consulta de ubicación conlleve una variación de las disposiciones reglamentarias vigentes, junto a la consulta se someterá una solicitud de variación utilizando el formulario correspondiente. En dicha solicitud se señalarán los motivos, fundamentos y razones que apoyan la solicitud. La consulta de ubicación que se someta para la consideración de una excepción, deberá evidenciar que cumple con las condiciones establecidas por la Junta en la reglamentación aplicable para el uso particular. Se deberá cumplir con los requisitos vigentes para cada consulta al momento de su radicación, según se indique en la hoja de instrucciones correspondiente. Además de los requisitos establecidos, la Junta podrá solicitar cualquier otra información que se determine necesaria para el análisis del proyecto específico a considerarse.

Una consulta de ubicación no se considerará radicada hasta que se haya cumplido con todos los requisitos de radicación.

El Secretario de la Junta devolverá los documentos presentados a la parte proponente, indicándole los formularios e información necesarios para que la consulta pueda ser aceptada y radicada. Toda documentación que se someta en la radicación de una consulta y durante el trámite de la misma en la Junta de Planificación, formará parte del expediente de la consulta y no será devuelta. Copia de esta documentación podrá ser obtenida, para fines legítimos, por cualquier persona interesada, en la Oficina del Secretario de la Junta, mediante el pago previo de los derechos correspondientes." (Enfasis suplido.)
Reglamento de Procedimientos Adjudicativos de la Junta, supra, Sec. 4.01.
En otras palabras, en el caso de no permitirse reglamentariamente determinado uso, el proponente deberá solicitar una variación en uso, mediante los mecanismos que proveen el Reglamento de Zonificación y el Reglamento de Procedimientos Adjudicativos de la Junta, previamente citados. Para solicitar la variación, se deberá utilizar el mecanismo de consulta, a tenor con la Sec. 3.03 del Reglamento de Procedimientos Adjudicativos de la Junta, supra, y, además, presentar, junto con los documentos de ésta, el formulario provisto para solicitar la variación. En dicho formulario se señalarán los motivos, fundamentos y razones que apoyan la solicitud, a tenor con la Sec. 98.05 del Reglamento de Zonificación, supra.
En el caso de autos, no solamente CCM no cumplió con ninguno de estos requisitos procesales, sino que, cuando en la vista pública se le dio la oportunidad de reevaluar su posición e indicar que deseaba efectivamente solicitar una variación, insistió en que no estaba solicitando una variación. Como ha indicado el Tribunal Supremo, el solicitante de una consulta de ubicación debe satisfacer, en cada caso, y de acuerdo al tipo de autorización solicitada, los requisitos vigentes al momento de su presentación. T. JAC, Inc. v. Caguas Centrum Limited, supra. En el caso de autos, CCM se negó a solicitar la variación requerida.
El Tribunal Supremo ha indicado reiteradamente que las agencias administrativas tienen la obligación de observar estrictamente las reglas que ellos mismos proclaman. T. JAC, Inc. v. Caguas Centrum Limited, supra. En el ejercicio de su discreción, la Junta no puede obviar sus propios estatutos. Id.
En el caso de autos, la Junta de Planificación no tenía autoridad para conceder la autorización solicitada por CCM, no habiendo solicitado dicha compañía el remedio adecuado, es decir, la variación. La Junta tenía la obligación, como hemos visto, de observar la reglamentación que ella misma había establecido. Una actuación contraria hubiera estado fuera de sus facultades, y en ese sentido, hubiera resultado ultra vires.
En ese sentido, no se cometió el segundo error señalado en el caso KLRA-00-00276.
*620 En cuanto al tercer error indicado en dicho recurso, relativo a la obligación de la Junta de descansar en evidencia sustancial y de considerar la prueba pericial y testifical presentada, no es necesario discutir el mismo. Como hemos visto, dadas las circunstancias del caso y de la solicitud presentada por CCM, la Junta de Planificación no tenía facultad para conceder una variación que no había sido solicitada y que era el mecanismo adecuado para autorizar el uso de taller de mecánica liviana como un uso accesorio a un uso comercial permitido en un distrito C-4. En ese sentido, conceder dicha autorización hubiera sido una actuación ultra vires de dicha agencia. En vista de ello, no tenemos que discutir el tercer error señalado en el recurso KLRA-00-00276.
IV
Analicemos ahora el segundo recurso, KLRA-01-00229.
Como ha dicho el Tribunal Supremo, no es necesario agotar los remedios administrativos antes de recurrir a la revisión judicial cuando la actuación impugnada se hizo sin jurisdicción de la agencia, lo que, en el caso del recurso KLRA-01-00229, surge claramente del historial procesal del caso. J. Exam. Tec. Méd. v. Elias et al., 144 D.P.R. _ (1997), 97 J.T.S. 141. Véase, además, la See. 4.3 de la Ley de Procedimiento Administrativo Uniforme (L.P.A.U.), Ley 170 del 12 de agosto de 1988, según enmendada, 3 L.P.R.A. see. 2173. No es necesario agotar remedios administrativos para la revisión judicial de actuaciones ultra vires de las agencias administrativas. Id.; J. Exam. Tec. Méd. v. Elias et al, supra.
Un análisis de las fechas de los acontecimientos relacionados con los permisos de uso y construcción ante la A.R.P.E. señala que, cuando dicha agencia aprobó el referido anteproyecto -el 23 de enero de 1996-, la consulta en la que se basó no era final y firme, por ser la misma -desde el 12 de enero de 1996-, objeto de revisión judicial. Como veremos más adelante, la aprobación de dicho anteproyecto por la A.R.P.E. requería que la consulta en la que el mismo se basaba fuera final y firme. En consecuencia, la A.R.P.E. actuó sin jurisdicción al autorizar el referido anteproyecto. Al examinar el expediente del caso KLAA-96-00014, encontramos que, aunque de acuerdo a la notificación que consta en el expediente, la A.R.P.E. no fue notificada de la presentación de la revisión judicial, CCM sí fue notificado directamente y, además, a través de sus abogados. Es decir, CCM tenía pleno conocimiento de que, al solicitar la reapertura del caso ante la A.R.P.E., en cuanto al anteproyecto y el permiso de construcción, estaba instando a la agencia a actuar a base de una consulta que no era final y firme. Como sabemos, el requisito de la buena fe se extiende a todo nuestro ordenamiento jurídico. Velilla v. Pueblo Supermarkets, Inc., 111 D.P.R. 585, 587-588 (1981). Ha indicado el Tribunal Supremo, no obstante, que el contenido ético de cada acto deberá examinarse a la luz de las circunstancias particulares del caso. Id.
Como indicamos anteriormente, los tribunales, al igual que las agencias administrativas, tenemos la obligación de interpretar las leyes de una manera global. Zambrana Maldonado v. E.L.A., 129 D.P.R. 740 (1992). La Sec. 10.00 del Reglamento de Procedimientos Adjudicativos de la Junta de Planificación, supra,. indica, en lo pertinente:
"Vigencia de consultas aprobadas - La aprobación de una consulta por la Junta tendrá una vigencia de doce (12) meses a partir de ... La parte proponente de una consulta autorizada por la Junta de Planificación, luego que la consulta advenga final y firme, deberá radicar ante la [A.R.P.E.], la próxima etapa correspondiente, dentro de la vigencia de la consulta, incluyendo que pueda ser radicada cerca del final del tiempo establecido. No obstante,...". (Enfasis supidó.)
Reglamento de Procedimientos Adjudicativos de la Junta, supra, Sec. 10.00.
De otro lado, la Sec. 14.03 del Reglamento de Procedimientos Adjudicativos de la A.R.P.E., Reglamento 3915 de 6 de mayo de 1989, indica, en lo pertinente:
"Reapertura de Solicitudes que Pierdan Vigencia - La reapertura de solicitudes denegadas que hayan sido *621 archivadas por desistimiento del solicitante se fundamentará en que el proyecto sea estudiado de acuerdo con la reglamentación vigente a la fecha de tal reapertura. Será indispensable que el proyecto cuente con una Consulta de Ubicación vigente a la fecha de tal reapertura en aquéllos casos cuyo procedimienta-fue iniciado , mediante Consulta de Ubicación ante la Junta de Planificación." (Enfasis suplido.)
Reglamento de Procedimientos Adjudicativos de la A.R.P.E., supra, Sec. 14.03.
Asimismo, la Sec. -10.07 del mismo Reglamento de Procedimientos Adjudicativos de la A.R.P.E., supra, indica:
"Solicitudes para Proyectos Autorizados por la Junta - La autorización de un proyecto que expida la Junta de Planificación no releva al interesado de cumplir con la presentación de la solicitud de permiso que corresponda ante la administración. En tales proyectos, la acción de la Junta se circunscribe a los aspectos cubiertos en la resolución expedida, correspondiendo a la Administración ejercer las funciones debidas en cuanto a la adjudicación de los aspectos del proyecto no cubiertos por tal resolución." (Enfasis suplido.)
Reglamento de Procedimientos Adjudicativos de la A.R.P.E., supra, Sec. 10.07.
En otras palabras, la Junta y la A.R.P.E. tienen una estrecha relación, en la que ambas agencias administran unos mismos reglamentos, teniendo la segunda una capacidad limitada en cuanto al poder adjudicativo que posee. Excepto en circunstancias específicamente delegadas, la A.R.P.E. sólo está autorizada a conceder permisos de construcción o uso cuando éstos estén específicamente autorizados por la reglamentación, o cuando la Junta lo haya autorizado específicamente mediante una consulta de ubicación.
En el recurso que analizamos, KLRA-01-00229, por lo tanto, CCM solicitó, y la A.R.P.E. reabrió el caso y aprobó el anteproyecto anteriormente indicado y el consecuente permiso de uso, a base de una consulta de ubicación que, en el momento de la A.R.P.E. autorizar el permiso, era objeto de revisión judicial, por lo que no había advenido final y firme, algo de lo que CCM, al menos -pues en el caso de la A.R.P.E. no sabemos con certeza en qué momento advino en conocimiento de que la enmienda a la consulta era objeto de una revisión judicial-, tenía pleno conocimiento de que estaba moviendo a la agencia a actuar ultra vires. La actuación de la A.R.P.E. fue, en consecuencia, ultra vires, en cuanto a la ampliación del taller de mecánica.
En cuanto al taller de mecánica original -las tres naves que, alegadamente operan desde el 1977-, nos resta aún analizar la situación.
La A.R.P.E., en su escrito en cumplimiento de orden, presentado ante la J.A.C.L. el 2 de junio de 2000, argumenta que lo único que está en controversia en estos momentos es la ampliación del taller de mecánica, por contar las tres naves originales con el permiso de uso 77-16-L-262-SPP desde el 1977. La agencia indica, además, "que el uso de instalación es incidental o accesorio al de ventas". Un examen de dicho documento, no obstante, arroja que el permiso indica, únicamente, como uso propuesto en la primera planta, lo siguiente: "Western Auto - Accesorios para Auto y Herramientas". No existe ninguna indicación en el renglón "Otros" o "Accesorios" de dicho formulario, que indique permiso de uso para la instalación de piezas como uso accesorio al uso principal de venta de piezas. Un examen* a su vez, del Reglamento de Zonificación, Reglamento de Planificación Núm. 4, vigente a 31 de octubre de 1977 -fecha de expedición del referido permiso de uso 77-16-L-262-SPP-, no indica que el uso de taller esté permitido en un distrito de zonificación C-4. Tenemos que concluir, en consecuencia, a pesar de las argumentaciones de la A.R.P.E., que CCM y Western Auto no han contado nunca -de acuerdo a la reglamentación existente y a los documentos existentes en los distintos expedientes ante este Tribunal- con un permiso de uso para la instalación de piezas y accesorios. Tampoco hemos encontrado en la reglamentación vigente, ninguna instancia que indique que se permite el uso de mecánica liviana como un uso incidental o complementario al comercio de neumáticos, accesorios y piezas de vehículo de motor, como alega la A.R.P.E. en su escrito.
*622 La A.R.P.E. tenía la obligación, de acuerdo a su ley orgánica y al Reglamento de Procedimientos Adjudicativos de la A.R.P.E., supra, de cumplir con la reglamentación existente.
En ese sentido, la argumentación de CCM y de la A.R.P.E., de que las tres naves del taller que operan -aparentemente- desde el 1977, tienen un permiso de uso vigente, es totalmente infundada. De hecho, así lo reconoció este Tribunal en su sentencia en el caso KLAA-96-00014. Véase, cita incluida a la pág. 6 de esta sentencia.
En resumen, ni las tres naves originales, ni las dos resultantes de la ampliación posterior, que comprenden el taller de mecánica de Western Auto, cuentan con un permiso de uso vigente. El permiso con el que cuenta la tienda, la faculta, únicamente, para la venta de piezas y accesorios de automóviles, no para su instalación.
A esa misma conclusión llegó la J.A.C.L. Analicemos la corrección de dicha determinación.
Como sabemos, la función de los tribunales al revisar las determinaciones de una agencia "se circunscribe a una gestión relativamente limitada". Misión Ind. P.R. v. J.P. y A.A.A., 142 D.P.R. 656, 672 (1997). En ese sentido, el Tribunal Supremo ha resuelto que para que un tribunal pueda decidir que la evidencia en el expediente administrativo no es sustancial, es necesario que la parte afectada demuestre que existe:

"[O]tra prueba en el récord que razonablemente reduzca o menoscabe el peso de tal evidencia, hasta el punto de que un tribunal no pueda, concienzudamente, concluir que la evidencia sea sustancial, en vista de la totalidad de la prueba presentada, incluyendo aquélla que sea contraria al punto de vista de la [agencia] y hasta el punto de que se demuestre claramente que la decisión de la [agencia] no está justificada por una evaluación justa del peso de la prueba."

Metropolitana S.E. v. A.R.P.E., 138 D.P.R. 200, 213 (1995); Hilton Hotels v. Junta Salario Mínimo, 74 D.P.R. 670, 686 (1953).
Es decir, la parte afectada por una decisión adversa tiene la obligación de convencer al Tribunal de que la evidencia en la cual se basó la agencia al formular sus determinaciones de hechos, no es sustancial, y que existe otra prueba en el récord que reduce o menoscaba el valor probatorio de la evidencia impugnada, hasta el punto que no se pueda concluir que la determinación de la agencia sea razonable de acuerdo con la totalidad de la prueba que tuvo ante su consideración. Metropolitana S.E. v. A.R.P.E., supra. Para determinar si la evidencia es sustancial, el tribunal debe considerar otra prueba en el récord que razonablemente reduzca o menoscabe el peso de la evidencia en que se basó la determinación. Hilton Hotels v. Junta Salario Mínimo, supra. No obstante, el Tribunal debe sostener la resolución de un conflicto probatorio, siempre que ésta se haya apoyado en una base racional. Id.
En el caso de autos, al examinar la totalidad del expediente administrativo, corroboramos que los tres errores aducidos por CCM, en el caso KLRA-01-00229, carecen de mérito. Es preciso señalar, para empezar, que los errores indicados fueron repetidamente planteados ante la J.A.C.L., por lo que dicho organismo tuvo amplia oportunidad de ponderar los señalamientos de CCM y, no obstante, en una resolución sumamente detallada, decidir en contra de dichos argumentos y a favor de la Asociación. En primer lugar, no tiene razón al argumentar que la J.A.C.L. no tenía facultad para emitir una resolución sin haber celebrado una vista en los méritos. Sabido es que la Constitución de Puerto Rico consagra en su See. 7 del Art. 11 de la Constitución del Estado Libre Asociado de Puerto Rico, 1 L.P.R.A. Art. II, Sec. 7, el principio de que ninguna persona puede ser privada de su libertad o propiedad sin proveérsele un debido proceso de ley, es decir, sin dársele la oportunidad de ser oído. Sabido también es que, para efectos de este principio constitucional, el concepto propiedad comprende todo aquello en lo cual la persona tenga un derecho o interés propietario protegido por el ordenamiento jurídico, y que este principio aplica también a las determinaciones de las agencias administrativas. Véanse, Goldberg v. Kelly, 397 U.S. 254 (1970); Vélez Ramírez v. Romero Barceló, 112 D.P.R. *623 716 (1982).
En el caso de autos, sin embargo, como hemos visto, CCM y Western Auto no tienen un interés-propietario, porque, según se evidencia de los documentos existentes en los expedientes ante nos, no poseen autorización alguna para el taller de mecánica liviana o la instalación de gomas, baterías u otros accesorios de automóviles. De hecho, ambas corporaciones, en ese sentido, han estado actuando de modo ilegal por más de treinta años.
El Tribunal Supremo ha indicado que, en derecho administrativo, cuando existe controversia de hechos, los derechos de las partes no deben ser adjudicados, ni siquiera de manera temporal, sin la celebración de una vista. Vélez Ramírez v. Romero Barceló, Id., a la pág. 730.
No obstante, en el caso del taller de Western Auto es preciso observar que la relación de hechos incluidos por la J.A.C.L. en su resolución, es producto de los distintos documentos que constan en los expedientes del caso, de los procedimientos llevados a cabo ante la Junta, la A.R.P.E. y la J.A.C.L., y.ahte_los diversos, tribunales. En ese sentido, todos y cada uno de los hechos enumerados es producto de un documento existente. No existe controversia sobre el hecho de que los permisos otorgados por la A.R.P.E. no tienen efectividad alguna -y que ninguna vez lo tuvieron.
Si bien es cierto que la Sec. 3.1 de la L.P.A.U., supra, establece el derecho de las personas a recibir un procedimiento justo y económico que les garantice el derecho de notificación oportuna de los reclamos en su contra; a presentar evidencia; a una adjudicación imparcial; y a que la decisión esté basada en el expediente, 3 L.P.R.A. see. 2151 (Supl. 2000), nada impide que una agencia administrativa tome una determinación sin celebrar una vista en su fondo, siempre y cuando no exista controversia sobre los hechos, en un caso como el de autos, en que toda la evidencia en el expediente, de forma documental, señala la corrección de la determinación delaJ.A.C.L. 
Como indica el profesor Fernández, la L.P.A.U. no dispone específicamente que exista un derecho a .una audiencia. Lo importante para conocer si existe el requisito de una audiencia es examinar el estatuto orgánico de la agencia administrativa, conjuntamente con el reglamento interno de la agencia. Véase, D. Fernández, supra, a las págs. 305-306. Un examen de las disposiciones que crean la J.A.C.L., los Arts. 30 y 31 de la Ley 76, supra, y de las Reglas de Procedimientos Adjudicativos de la Junta de Apelaciones sobre Construcciones y Lotificaciones, no arroja que exista un derecho ineludible a una audiencia. La alegación de CCM de que la Regla 13 de las referidas reglas de la J.A.C.L. es la única ocasión en que se autoriza la expedición de un orden sin la celebración de una vista, es una interpretación demasiado taxativa de las referidas reglas. En el caso de autos, no se trata de una situación de emergencia o en la que el peticionario haya demostrado que el procedimiento ordinario ocasione un daño irreparable. Por el contrario, se trata de un caso que estuvo prácticamente cinco años, y por diversos motivos, ante la J.A.C.L., y que ésta tuvo amplia oportunidad de conocer a base de los documentos ante sí.
De hecho, la Regla 3 de las Reglas de Procedimientos Adjudicativos de la Junta de Apelaciones sobre Construcciones y Lotificaciones, dispone que dichas reglas "se interpretarán de forma que se garantice una solución, justa, rápida y económica de los recursos instados ante esta Agencia". Del mismo modo, la Regla 31 de las Reglas de Procedimientos Adjudicativos-de la-J:A:G.L., supra, dispone que dichas reglas "no serán interpretadas en el sentido de limitar la jurisdicción" de la J.A..C.L.
Como indica Schwartz en su tratado de derecho administrativo, "[as] a general proposition, hearings are not required when no disputed issues are raised". Bernard Schwartz, Administrative Law, 3th. Ed., Boston, Little, Brown and Brown, 1991, pág. 228.
En resumen, no tenía obligación la J.A.C.L. de celebrar una vista evidenciaría, cuando los hechos del caso no están en disputa. De todos modos, la flexibilidad es la esencia del trámite administrativo. Junta de *624 Planificación v. J.A.C.L., 109 D.P.R. 210 (1979). Debe evitarse, como ha indicado el Tribunal Supremo, que ciertos asuntos en el derecho administrativo se prolonguen innecesariamente por tecnicismos que pueden evitarse mediante una plena y cabal consideración de todos los asuntos bajo ley. Id., a la pág. 212.
Tampoco cometió la J.A.C.L. el segundo error apuntado por CCM en el recurso KLRA-01-00229, al determinar que tenía jurisdicción para considerar la apelación presentada ante dicho organismo por la Asociación. CCM alega que el recurso ante la J.A.C.L. fue presentado tardíamente porque la Asociación advino en conocimiento del permiso concedido en la vista celebrada el 3 de abril de 1996. No tiene razón. Tampoco tiene razón cuando argumenta que la Asociación no era parte en el procedimiento de permisos ante la agencia.
La propia A.R.P.E. reconoció, en la notificación que envió a la Asociación el 10 de abril de 1996, que había cometido un error al no haber notificado previamente a dicha entidad la copia del acuerdo de 13 de marzo de 1996, con copia del permiso otorgado. Más aún cuando había, en dicho caso, una querella ante la agencia presentada por la Asociación. Véanse, en este sentido, los requisitos de notificación al querellante, incluidos en las Secs. 17.02 (2), 17.03, 17.05, 17.06 y 17.07 del Reglamento de Procedimientos Adjudicativos de la A.R.P. E., supra. ¿Cómo no iba a estar la A.R.P.E. obligada a notificar a la Asociación la adjudicación de un permiso concedido para legalizar -supuestamente- la situación de un local sobre el cual la Asociación era la persona querellante y que, en esos momentos, era objeto de un procedimiento especial ante los tribunales, en el cual, evidentemente, la Asociación era parte y estaba participando?
Como es sabido, no es hasta que se haya efectuado una correcta notificación a todas las partes que comienzan a transcurrir los términos jurisdiccionales para todas las partes acudir en revisión al foro correspondiente. Véanse, Reglas 65.3 y 67.2 de Procedimiento Civil, 32 L.P.R.A. Ap. III, Rs. 65.3 y 67.2; Rodríguez Mora v. García Lloréns, 147 D.P.R._(1998), 98 J.T.S. 152.
La interpretación que hace CCM del caso de Asoc. Residentes v. Montebello Dev. Corp., 138 D.P.R. 412 (1995), en su aplicación al caso de autos, resulta incorrecta. Como indicó el Tribunal Supremo, el debido proceso de ley requiere, como regla general, la notificación o citación real y efectiva, ajustada a los preceptos estatutarios aplicables; únicamente como método alterno, por excepción en caso de circunstancias peculiares, se justificaría la notificación constructiva por inferencias. Id. En el caso de autos, no es necesario utilizar un método alterno para inferir que hubo una notificación porque, en efecto, hubo una notificación, efectuada por la A.R.P.E. el 10 de abril de 1996. En el caso ante nos, por lo tanto, no existen circunstancias particulares que justifiquen la notificación constructiva. Al igual que no aplicaba la excepción en el caso de Montebello Dev. Corp., supra, tampoco aplica en el caso de autos.
Como indica el profesor Fernández, todas las partes tienen que ser notificadas de la resolución final. Demetrio Fernández, Derecho Administrativo y Ley de Procedimiento Administrativo Uniforme, Bogotá, Editorial Forum, 1993, pág. 190. El requisito de notificación es esencial para fines de presentar la reconsideración y el recurso de revisión. Id. No cometió la J.A.C.L. el segundo error señalado en el recurso KLRA-01-00229.
En el tercer error apuntado por CCM en dicho caso, de que se equivocó la J.A.C.L. al revocar los permisos concedidos previamente por la A.R.P.E., a base de unas resoluciones que, a juicio de CCM, no sirven de fundamento para la revocación, insiste CCM que la sentencia de este Tribunal de 31 de julio de 1997 sólo requería la celebración de una vista pública para la concesión de la ampliación al taller y que, por otro lado, la expedición del auto por este Tribunal el 31 de marzo de 2000, en el caso de la revisión KLRA-00-00276, tienen el efecto de dejar vigentes los permisos en cuestión.
Como hemos visto a lo largo de nuestro análisis del historial de esta controversia, los permisos expedidos para la ampliación del taller no tienen base legal alguna, además de que la tienda Western Auto nunca tuvo autorización para el taller, es decir, para la instalación de piezas, gomas y baterías.
*625 En vista de ello, estos dos argumentos de CCM no tienen fundamento alguno, y rayan, de hecho, en la frivolidad. Como ha indicado el Tribunal Supremo, la frivolidad se define como "aquéllo que no tiene razón de ser, sin méritos, sin peso, ni lógica alguna.", citando a I. Rivera García, Diccionario de Términos Jurídicos, 2da ed., 1985, a la pág. 108. Depto. Recreación v. Asoc. Rec. Round Hill, 149 D.P.R._(1999), 99 J.T.S. 138.
En otras palabras, actuó correctamente la J.A.C.L. al resolver como lo hizo.
y
No podemos los tribunales permitir que se.utilice el foro, judicial y el derecho que tiene todo ciudadano a un debido proceso de ley, con el propósito precisamente de burlar las disposiciones que rigen nuestra vida en común. Como es sabido, los tribunales tienen capacidad para imponer sanciones. Rivera v. Insular Wire Products, Corp., 140 D.P.R. 912 (1996). Además, el Art. 4.002 de la Ley de la Judicatura de 1994, supra, 4 L.P.R.A. sec. 22k (Supl. 2000), y la Regla 85 del Reglamento del Tribunal de Circuito de Apelaciones, 4 L.P.R.A. Ap. XXn-A, R. 85, conceden al Tribunal de Circuito de Apelaciones, la facultad de imponer costas, gastos honorarios de abogado, además de sanciones por temeridad o frivolidad en la presentación de los recursos. La See. 4.6 de la L.P.A.U., supra, además, reconoce la facultad de los tribunales, al efectuar revisiones de determinaciones administrativas, de imponer costas, gastos y honorarios de abogado. 3 L.P.R.A. see. 2176. Del mismo modo, la Regla 44.1 (c) de las Reglas de Procedimiento Civil, 32 L.P.R.A. Ap. III, R. 44.1 (c) (Supl. 200), dispone el procedimiento para la imposición de costas en apelación. 
Si bien es cierto que el Tribunal Supremo ha indicado que sólo claramente inmeritorio debe dar paso a una determinación de frivolidad por un tribunal apelativo, Depto. Recreación v. Asoc. Rec. Round Hill, supra, en el caso de autos, CCM ha sido temerario al utilizar -repetidamente y presentando, esencialmente, los mismos argumentos-, los foros judiciales y administrativos, mientras continúa operando el taller de mecánica, sin tener los permisos requeridos.
De hecho, haber promovido estos dos recursos de revisión administrativa, sobre todo, en el caso de KLRA-01-00229, constituye el último episodio de temeridad en que ha incurrido CCM.
VI
Por los fundamentos antes expresados, habiendo expedido previamente el auto solicitado en el caso KLRA-00-00276, expedimos ahora el auto solicitado en el caso KLRA-01-00229 y confirmamos las resoluciones de la Junta de Planificación y de la Junta de Apelaciones sobre Construcciones y Lotificaciones.
En consecuencia, ordenamos a la A.R.P.E. que proceda con la revocación de los tres permisos relacionados, como ordenó la J.A.C.L., -el permiso de construcción 94-16-F-056-SPC; el anteproyecto 95-17-B- 117-CPA y el permiso de uso 96-5-662-, y emita, además, una orden que paralice el uso de taller de mecánica liviana -en su totalidad, incluyendo las cinco naves-, y que ordene su demolición, en virtud del Art. 25 de la Ley 76, supra, 23 L.P.R.A. sec. 7 lx.
Este Tribunal impone a CCM una sanción por $2,000 dólares, a beneficio del Estado Libre Asociado de Puerto Rico, pagaderos en sellos de rentas intemas en la Secretaría de este Tribunal, y $3,000 de honorarios de abogado a beneficio de la Asociación, a ser pagadas ambas sanciones en o antes de los treinta días posteriores a la notificación de esta sentencia.
Deberá CCM informar a este Tribunal el cumplimiento con las sanciones impuestas, mediante moción que deberá presentar no más tarde de diez días después de satisfecha la sanción.
Del mismo modo, este Tribunal ordena a CCM satisfacer costas y gastos, a beneficio de la Asociación, en virtud de la Regla 44.1 (c) de Procedimiento Civil, supra. La Asociación tendrá, por lo tanto, un término de diez días, a partir de la notificación de esta sentencia, para presentar el memorando correspondiente ante este *626 Tribunal, por ser ésta una revisión administrativa, a tenor con las disposiciones la See. 4.6 de la L.P.A.U., supra, y de la Regla 44.1 de Procedimiento Civil, 32 L.P.R.A. Ap. III, R. 44.1 (Supl. 2000).
Lo acordó y manda el Tribunal y lo certifica la señora Subsecretaria General.
Gladys E. Ortega Ramírez
Subsecretaría General
ESCOLIOS 2002 DTA 2
1. El panel estuvo compuesto por los jueces González Román, González Rivera y Ortiz Carrión.
2. En efecto, la Junta había emitido, el 24 de enero de 1997, la resolución JP-97-259, aclarando particulares sobre el uso de mecánica liviana en proyectos comerciales. El texto de dicha resolución, en lo pertinente, indica:

“1. Que para los proyectos comerciales de ventas de accesorios y piezas de vehículos de motor, en los cuales se hayan establecido parámetros conformes a un distrito C-2 mediante resolución de la Junta de Planificación, se permitirá el uso de mecánica liviana como uso accesorio, incluyendo las siguientes actividades:

a. Lavado, engrase, cambio de aceite y filtro de automóviles.

b. Reparaciones menores a los automóviles, tales como: frenos, bujías, platinos, condensadores, lámparas, bocinas y neumáticos.

Se excluye todo trabajo de hojalatería, pintura o tapizado de interiores.

2. Que para proyectos comerciales en los cuales se haya establecido parámetros conforme a un distrito C-4 mediante Resolución de la Junta de Planificación, el uso de mecánica liviana como uso accesorio debe estar contemplado específicamente como parte de la resolución. ” (Enfasis suplido.)
Resolución JP-97-259, de 24 de enero de 1997, incluida a la pág. 151 del apéndice, en el recurso KLRA-00-00276.
3. El aviso de la vista pública indica que la vista se celebraría el 8 de septiembre de 1999. No está claro del expediente ante nos, si la vista celebrada el 23 de septiembre de 1999 fue continuación de la vista citada para el 8 de ese mes, o si se trató de una nueva vista. En la resolución recurrida, la Junta de Planificación no hace referencia a la incongruencia en las fechas, indicando únicamente que la vista se celebró el 23 de septiembre de 1999.
4. Recuérdese que el 7 de diciembre de 1995, la Junta se había reafirmado en su decisión y que el 12 de enero de 1996, la Asociación había presentado un recurso de revisión ante el Tribunal Superior, Sala de San Juan. Véanse, págs. 5 y ss. de este escrito.
5. El 23 de junio de 1995, la A.R.P.E., mediante informe sobre acuerdo adoptado por el Director, había anulado o dejado sin efecto un permiso de construcción previamente otorgado, el 94-16F-056-SPC-1, en el que se autorizaba la ampliación, por no contar con una consulta de ubicación aprobada. Véanse, págs. 32-33 del apéndice en el caso KLRA-01-00229.
6. De acuerdo a los expedientes ante nos, dicha agencia no tomó ninguna acción al respecto. La A.R.P.E. parece haber paralizado los procedimientos, a solicitud de CCM.
7. Véase, nota al calce núm. 5.
8. Este reglamento, el número 4844, era el reglamento vigente a 14 de septiembre de 1998, el momento de solicitarse a la Junta de Planificación la autorización que da origen al caso KLRA-00-00276. Fue anulado por el reglamento 6211, que tiene fecha de efectividad de 5 de noviembre de 2000.
9. En dicha sección se indican, además, las definiciones de uso y uso accesorio.
*627 10. La Sec. 98.05 dispone:

"Variaciones en uso

La Junta o la Administración, cada cual en su ámbito jurisdiccional, podrá autorizar variaciones en uso cuando se pueda establecer que ninguno de los usos que están permitidos en el distrito es factible en la propiedad desde el punto de vista físico o económico. Se tomará en consideración, entre otros, lo siguiente:

1. El costo de adaptar la propiedad a los usos permitidos debido a disposiciones de éste u otros reglamentos y el beneficio que derivaría, una vez adoptada ésta para los usos permitidos.

2. Las razones por las cuales ningún uso permisible es factible en la propiedad sin variación, deben ser únicas a la misma, y no una característica general del distrito o del sector del distrito donde ubica. No podrán haber sido causadas por el dueño.

3. El uso para el cual se solicita la variación a las disposiciones reglamentarias es compatible con los propósitos del distrito y con el vecindario o comunidad en que ubica.

4. La variación solicitada no afectará adversamente, entre otros, los siguientes factores:

a. La disponibilidad de la infraestructura

b. El contexto en que ubica

c. El ambiente de la calle

d. La seguridad y tranquilidad de los vecinos

5. El uso propuesto beneficia al vecindario

6. El uso para el cual se solicita la variación está permitido por las disposiciones del Tópico sobre Zonas Escolares de este Reglamento."

Reglamento de Zonificación, supra. Sec. 98.05.
11. Este reglamento, el número 5244, fue anulado por el reglamento 6031. Este último tiene fecha de efectividad de 12 de noviembre de 1999.
12. Véase, pág. 383 del apéndice en el caso KLRA-01-00229.
13. La Sec. 16.02 del Reglamento de Zonificación entonces vigente indicaba:

"Usos en Distritos CA

En los Distritos C-4 se usarán los edificios o pertenencias para los fines expuestos a continuación:

1. Agencias hípicas.

2. Barberías.

3. Casas bancarias o financieras.

4. Cinematógrafos.

5. Comercio al detal de artículos de consumo o uso corriente en el hogar.

6. Estaciones de gasolina de acuerdo con lo establecido en las Secciones 27.00 y 28.00 del Tópico 6 de este Reglamento.

*628
7.Estaciones para la recolección y distribución de ropas y materiales para ser llevados a los establecimientos de limpieza y tintorería.

8. Estudios fotográficos.

9. Lavanderías automáticas operada por monedas.

10. Oficinas sobre la primera planta.

11. Panaderías y reposterías que utilicen hornos eléctricos o de gas fluido y cuyos productos se vendan al detal dentro de la pertenencia.

12. Recreación comercial.

13. Reparación de zapatos.

14. Restaurantes, cafeterías, fuentes de soda y barras.

15. Salones de belleza.

16. Sastrerías.

17. Establecimientos para servicios personales. ”

Reglamento de Zonificación Núm. 4, supra.
14. Véase, la determinación de este Tribunal en el caso KLRA-97-00194.
15. La Regla 13 dispone:

"La Junta [J.A.C.L.]podrá emitir cualquier orden o resolución sin necesidad de celebrar Vista Pública o Privada en aquellos casos en que el peticionario demuestre fehacientemente que el procedimiento ordinario resulte en un daño irreparable. ”

Reglas de Procedimientos Adjudicativos de la Junta de Apelaciones sobre Construcciones y Lotificaciones, R. 3.
16. Aunque la disposición citada hace referencia, únicamente, a recursos de apelación, entendemos que el mismo principio es aplicable a revisiones administrativas, sobre todo, dadas las disposiciones de la See. 4.6 de la L.P.A.U., supra. Como ha indicado el Tribunal Supremo, nada impide que se adopten normas de las Reglas de Procedimiento Civil para guiar el curso de los procedimientos administrativos. Pérez Rodríguez v. P.R. Park Systems, Inc., 119 D.P.R. 634 (1987). De todos modos, los tribunales tenemos la facultad de "[rjealizar u ordenar cualquier acto que resulte necesario a fin de cumplir a cabalidad sus funciones". Art. 2.002 (i) de la Ley de la Judicatura de 1994, supra, 4 L.P.R.A. sec. 22d (i) (Supl. 2000).